# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

JESSICA CROUCH on behalf
of K.C.,

§
§
§

     *Plaintiff,*

§
§

*versus*

§
§

CIVIL ACTION NO. 5:11-820

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

§
§
§
§
§
§

     *Defendant.*

§

## REPORT AND RECOMMENDATION

Plaintiff Jessica Crouch ("Plaintiff"), moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for Supplemental Security Income filed on behalf of her minor son, K.C.[1] Complying with General Order # 18, dated September 23, 2003, (Dkt. No. 3) the parties join issues through competing briefs.

## I. Background

K.C., born in 1997, was nine years old when a protective application for benefits was filed on September 18, 2007. (T. 14, 155-57).[2] It claimed that K.C. is disabled as a result of *attention deficit hyperactivity disorder* ("ADHD").

---

[1]    In accordance with Rule 5.2(a) of the Federal Rules of Civil Procedure and 8.1 of the Local Rules for the Northern District of New York, the minor, K.C., will be referred to by his initials.

[2]    "T." followed by a number refers to the page of the administrative record. (Dkt. No. 9).

After an initial denial of benefits (T. 83-86), Plaintiff requested a hearing before an administrative law judge ("ALJ"). (T. 87). ALJ Robert E. Gale ("ALJ Gale") conducted an evidentiary hearing in Syracuse, New York, on August 6, 2010. (T. 19, 29-65). Plaintiff and K.C. appeared, represented by counsel, Jaya Shurtliff, Esq. (T. 14, 31-68). ALJ Gale received into evidence testimony from Plaintiff and K.C., forensic reports from state agency consultants, and K.C.'s medical and school records. (T. 31-68).

On August 13, 2010, ALJ Gale issued an unfavorable decision. (T. 14-26). Plaintiff appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. (T. 152-154). On May 17, 2011, the Appeals Council denied Plaintiff's request to review. (T. 1-6). This rendered ALJ Gale's opinion the final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Plaintiff timely instituted this case on July 15, 2011. (Dkt. No. 1).

## II. Preliminary Discussion

An initial discussion of the Social Security program at issue, the administrative decision-making process (including certain terms of art), and various rules governing the adjudicative process will aid comprehension of K.C.'s application, ALJ Gale's decision and Plaintiff's challenges thereto.

### A. *Eligibility for Child Benefits*

The Supplemental Security Income ("SSI") program, usually thought to be a public benefits system for needy aged, blind, or disabled *adult* individuals, also provides that:

> *[a]n individual under the age of 18* . . . [may receive benefits] . . . . if that individual has a medically determinable . . . mental impairment, which results in marked and severe functional limitations, and which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (emphasis added).

Social Security Administration regulations establish a three-step, sequential analysis to determine child-benefits eligibility. 20 C.F.R. § 416.924(a); *see also Miller v. Commissioner of Soc. Sec.*, 409 Fed. App'x 384, 386 (2d Cir. 2010)*; Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004). First, administrative judges determine whether a child is engaged in substantial gainful activity.[3] 20 C.F.R. § 416.924(b). If not, administrative judges next consider at Step 2 whether the child has a "medically determinable impairment that is severe." *Id.* § 416.924(c).[4] If so, administrative judges proceed to Step 3 to determine whether the impairment "medically equals" or (pertinent here) "functionally equals" a disability listed in a "Listing of Impairments." *Id.* § 416.924(c)-(d). When a child has such an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months, the child is deemed disabled and entitled to benefits. 20 C.F.R. § 416.924(d)(1); *see also Pollard*, 377 F.3d at 189.

At Step 3, a child's functional limitations that do not *medically equal* the "Listing of Impairments" are evaluated for *functional equivalence* by considering how the child functions in six areas denominated as "domains." These are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are:

---

[3] The provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

[4] For a child, a medically determinable impairment or combination of impairments is *not severe* when it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

     (i)      Acquiring and using information;
     (ii)     Attending and completing tasks;
     (iii)    Interacting and relating with others;
     (iv)    Moving about and manipulating objects;
     (v)     Caring for yourself; and,
     (vi)    Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(I)-(vi). A medically determinable impairment or combination of impairments "functionally equals" a listed impairment when it "results in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."[5] *Id.* § 416.926a(a); *see also Ramos v. Barnhart*, No. 02Civ.3127(LAP)(GWG), 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003).[6]

The burden is on a claimant to prove disability within the meaning of the Social Security Act ("the Act"). *See* 42 U.S.C. § 1382c(a)(3)(H); 20 C.F.R. § 416.912. When a claimaint succeeds, SSI benefits can be paid no earlier than the month after the month in which the application is filed. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

---

[5]     A "marked" limitation is defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains. 20 C.F.R. § 416.926a(a). Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations." 20 C.F.R. § 416.926a(e)(3)(i); *see also Pollard*, 377 F.3d at 190.

[6]     Social Security Ruling (SSR) 09-1p directs an ALJ to consider the "whole child." This approach requires ALJs to consider a child's everyday activities, determine all domains involved in performing them, consider whether the child's medically determinable impairment(s) account for limitations in the child's activities, and determine what degree the child's impairment(s) limit the child's ability to function age-appropriately in each domain. SSR 09-1p, TITLE XVI: DETERMINING CHILDHOOD DISABILITY UNDER THE FUNCTIONAL EQUIVALENCE RULE–THE "WHOLE CHILD" APPROACH, 2009 WL 396031, at **2-3 (SSA Feb. 17, 2009).

B.    *Developing the Record*

"Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial." *Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009) (internal quotation marks omitted). "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* (internal quotation marks omitted); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). "Accordingly, an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the absence of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him." *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004) (emphasis in original) (internal quotation marks and citations omitted). Instead, ALJs must make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (quoting 20 C.F.R. § 404.1512(d)). Thus, when evidence in hand is inadequate for an ALJ to determine whether a claimant is disabled, the ALJ should re-contact the treating physician or other medical sources and request additional records. 20 C.F.R. §§ 404.1512(e), 404.1520(c); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (noting that when there is an inadequate medical record, the ALJ must *sua sponte* seek additional information).

On the other hand, an ALJ's duty to develop the record is not infinite. When "there are no obvious gaps in the administrative record, and . . . the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 48); *see*

*also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (ALJ required to obtain additional evidence – including recontacting medical sources – only when ALJ cannot decide whether a claimant is disabled based on existing evidence); *Hart v. Commissioner of Soc. Sec.*, No. 5:07–CV–1270 (DNH), 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012) (When there is sufficient evidence to make a determination, an administrative judge is not obligated to again contact a medical source.)

C.     *Weighing Opinion Evidence*

    1.     <u>Treating Physician</u>

An administrative law judge must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). When controlling weight is not given a treating physician's opinion (because it is not "well supported" by other medical evidence), an ALJ should consider the following factors in determining weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Halloran*, 362 F.3d at 32; *Shaw*, 221 F.3d at 134.

2.     "Other Sources"

The Commissioner will consider evidence from "other sources" to show "severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. §§ 404.1513(e), 416.913(e). Opinions from "other sources" can be "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06–03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS, 2006 WL 2329939, at *3 (SSA Aug. 9, 2006).

Parents, teachers, and social workers are considered "other sources."[7] While their opinions cannot "establish the existence of a medically determinable impairment," they may be used as a means of providing insight into a child's degree of impairment and functional ability. *Id.* at *2 (citing 20 C.F.R. § 416.913(d)); *see also Reid v. Astrue*, No. 07–CV–577 (LEK), 2010 WL 2594611, at *5, n. 4 (N.D.N.Y. June 23, 2010) ("While the opinions of educators and other non-medical sources are not entitled to controlling weight under the regulations, they are, nevertheless, deemed valuable sources of evidence in assessing impairment severity and functioning and should be considered by the ALJ.").

Opinions offered by teachers "should be evaluated by using the [20 C.F.R. § 416.927] factors," although "[n]ot every factor . . . will apply in every case." SSR 06–03p, 2006 WL 2329939, at *5; *see also Bonet ex rel. T.B. v. Astrue*, No.

---

[7]     The regulation gives the following examples of "other sources:" (1) medical sources not considered acceptable medical sources, such as nurse-practitioners, chiropractors, therapists, and physicians' assistants; (2) educational personnel such as teachers and daycare workers; (3) social welfare agency personnel; and (4) other non-medical sources, including parents, friends, neighbors, and clergy members. 20 C.F.R. § 416.913(d)(1)-(4).

1:11–cv–1140 (GLS), 2012 WL 3544830, at *7 (N.D.N.Y. Aug. 16, 2012).  The opinion of a "non-medical source," such as a teacher, may even "outweigh the opinion from a medical source," when the teacher "has seen the individual more often and has greater knowledge of the individual's functioning over time *and* if the [teacher's] opinion has better supporting evidence and is more consistent with the evidence as a whole."  SSR 06–03p, 2006 WL 2329939, at *6 (emphasis supplied).

## D.   *Weighing Interested Testimony*

A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged.  *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.929; SSR 96-7p, POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996).  The best-informed (sometimes *only*) source of information regarding intensity, persistence and limiting effects of pain and other potentially disabling symptoms is the person who suffers therefrom.  Testimony from claimants, therefore, is not only relevant, but desirable.  On the other hand, such testimony is subjective and may be colored by the claimant's interest in obtaining a favorable outcome.  Hence, subjective symptomatology by itself cannot be the basis for a finding of disability.

An ALJ is tasked with making credibility assessments, *i.e.*, deciding how much weight to give to claimants' subjective self-evaluations.  *See Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not [the reviewing courts], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."). This, perhaps, is the most difficult task for any fact-finding adjudicator, administrative or judicial. Fortunately, the Commissioner provides explicit guidance in this area. First, a formally-promulgated regulation requires – once an impairment is identified – consideration of seven specific, *objective* factors that naturally support or impugn *subjective* testimony of disabling pain and other symptoms.[8]

Second, SSR 96–7p directs ALJs to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

---

[8] An ALJ must evaluate a claimant's symptoms based on the medical evidence and other evidence, including the following factors:

   (i)   claimant's daily activities;
   (ii)  location, duration frequency, and intensity of claimant's pain or other symptoms;
   (iii) precipitating and aggravating factors;
   (iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
   (v)  treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
   (vi) measures claimant uses or has used to relieve pain or other symptoms; and
   (vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c).

SSR 96-7, 1996 WL 374186, at *2. The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Brandon v. Bowen*, 666 F. Supp. 604, 609 (S.D.N.Y. 1987).

## III.   The Commissioner's Decision

ALJ Gale determined at Step 1 that K.C. did not engage in substantial gainful activity after his application date. (T. 17). At Step 2, ALJ Gale found that K.C.'s attention deficit hyperactivity disorder and a learning disorder were severe impairments within the meaning of the Act. (T. 17-18). At Step 3, ALJ Gale found that K.C. does not have an impairment or combination of impairments that meets, medically equals or functionally equals one of the listed impairments. (T. 18-26). Consequently, ALJ Gale concluded that K.C. was not disabled. (T. 26).

ALJ Gale made two choices during his deliberations that give rise to the instant appeal. First, he elected to accord "significant weight" to medical source opinions while giving only "some weight" to opinions of two of K.C.'s teachers, whose evaluations arguably are more favorable to K.C.'s application. (*See* comparison of opinion evidence, *infra*, at Section VI. *A.* 1.) Second, he decided to base his decision on the existing evidentiary record before him rather than supplement it with additional evidence from treating or other sources. (*See*

discussion, *infra*, at Section VI. *B*.). These deliberative choices give rise to asserted errors described in the next section.

## IV. Alleged Errors

Plaintiff claims that ALJ Gale committed multiple errors in his application of the three step sequential evaluation. Specifically, Plaintiff contends:

1. The ALJ did not evaluate the opinion evidence in accordance with the appropriate legal standards set forth in SSR 06-03p and erred by failing to find that Claimant functionally equaled the listings;

2. The ALJ failed to develop the record by not attempting to obtain a treating source opinion on limitations; and

3. The ALJ's credibility assessment is not supported by substantial evidence.

(Dkt. No. 12, p. 1, 10-23).

The Commissioner maintains that ALJ Gale's decision is supported by substantial evidence and, therefore, should be affirmed. (Dkt. No. 15, pp. 6-25).

## V. Judicial Review

The court's limited role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). When proper principles of law were applied, and when the Commissioner's decision is supported by

substantial evidence,[9] the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran*, 362 F.3d at 31.

Under these constraints, reviewing courts cannot retry factual issues *de novo,* nor can they substitute their interpretations of administrative records for that of the Commissioner when the record contains substantial support for the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Rather, in such circumstances, courts must defer to the Commissioner's resolution of conflicting evidence. *See Behling v. Commissioner of Soc. Sec.*, 369 Fed. App'x 292, 293 (2d Cir. 2010) (citing *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.").[10] Hence, reviewing courts may not overturn the Commissioner's administrative rulings just because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

---

[9]     "Substantial evidence" is a term of art. It means less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran*, 362 F.3d at 31. Stated another way, to be "substantial," evidence need only be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 262, 299-300 (1939), *cited in* Harvey L. McCormick, Social Security Claims and Procedures § 672 (4th ed. 1991).

[10]     "'[The Court] may only set aside a determination which is based upon legal error or not supported by substantial evidence.'" *Monette v. Astrue*, 269 Fed. App'x 109, 110-11 (2d Cir. 2008) (quoting *Berry*, 675 F.2d at 467); *see also* 42 U.S.C. § 405(g).

Administrative law judges (who usually have the only opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying) obviously are best-positioned to make accurate credibility determinations.[11]   Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator.[12]  They cannot, however, abdicate their statutory duty to determine whether correct principles of law were applied and whether challenged decisions are supported by substantial evidence.  Consequently, even credibility choices are examined in that limited context.

Although legal errors and evidentiary errors are distinct analytically, such distinction often is blurred in judicial review of a Commissioner's decisions denying disability-based benefits.  For example, failure to develop the record violates a *legal* duty.  The effect of such violation also can deprive the decision

---

[11]     *See Campbell*, 465 Fed. App'x at 5 (function of Commissioner, not the court, to appraise credibility); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (stating that deference is given to ALJ's decision because he is in the best position to assess the claimant's credibility).

[12]     *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *Aponte*, 728 F.2d at 591 ("It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *see also see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

of substantial *evidentiary* support.[13] Similarly, a legally-flawed credibility choice results in lack of substantial evidence.[14] Finally, when an ALJ's credibility determination is based, in large part, on factual errors, the determination is not supported by substantial evidence and must be remanded.[15]

## VI. Discussion and Analysis

The proffered errors listed above in Section IV. are now discussed and analyzed separately and in order:

### A. Did ALJ Gale Violate SSR 06-3p?

#### 1. The Opinion Evidence

In K.C.'s case, opinion evidence was critical to a determination of whether K.C.'s severe impairments "functionally equal" a disability in the "Listing of Impairments." The *medical sources* included: treatment notes from K.C.'s pediatrician, Dr. Sivaneswary Ananda, M.D. (T. 330, 347-86); results from psychological and intelligence quotient testing by consultative psychologist, Dr.

---

[13]   *See Daviau v. Astrue*, No. 09-CV-0870 (MAD), 2012 WL 13543, at *6 (N.D.N.Y. Jan. 4, 2012) (citing *Yankus v. Astrue*, No. 07-CV-0316 (JFB), 2008 WL 4190870, at *6 (E.D.N.Y. Sept. 10, 2008) (where the ALJ fails to fully develop the record in accordance with the Second Circuit's mandate for *pro se* claimants, the Court cannot determine, as a matter of law, whether substantial evidence supports the ALJ's findings).

[14]   *See Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) ("[t]he failure to make credibility findings regarding the [claimant's] critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability").

[15]   *See Horan v. Astrue*, 350 Fed. App'x 483, 485 (2d Cir. 2009) (ALJ's credibility determination based largely on factual errors not supported by substantial evidence); *Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir. 1996) (substantial evidence did not support ALJ's decision when ALJ made several factual errors in evaluating medical evidence).

Stephen Tien, Ph.D. (T. 331-35); and conclusions from a childhood disability evaluation by state agency psychiatrist, Dr. K. Prowda (T. 336-41). The *other sources*, K.C.'s teachers, completed Teacher Questionnaires.[16] (T. 196-203, 268-275).

### a. Medical Source Opinion

During the relevant time, Dr. Ananda saw K.C. thirty-six times. She regularly found that K.C.'s ADHD was under control with medication. (T. 347-48, 351-52, 354, 356-57, 359-60, 372-73, 375-79).

Consultative examiner, Dr. Tien's, mental status examination showed that K.C. was cooperative and well-behaved, with adequate social skills, no hyperactivity or distraction, adequate grooming, appropriate eye contact, fluent speech, adequate expressive and receptive language, coherent and goal-directed thought process, full orientation, and fair insight and judgment. (T. 333). Dr. Tien noted mild impairments of attention and concentration and recent and remote memory skills. *Id.* He also found that K.C. tended to work slowly rather than impulsively. *Id.* Dr. Tien reported that K.C. had a verbal IQ of 88, performance IQ of 84, and a full scale IQ of 85. (T. 334). Dr. Tien opined that K.C. was in good physical health, and that, with a continuing IEP, he should be able to work close to grade-level. (T. 335).

---

[16] On the teacher questionnaire, under each domain, a rating comparing the functioning of same-aged children without impairments was utilized. The rating scale ranged from "1," indicating "no problem" to "5," indicating "a very serious problem." Several activities were rated in each domain. (T. 196-203, 268-275).

In completing a childhood disability evaluation, Dr. Prowda found that: K.C. had marked limitations in attending and completing tasks; less than marked limitations in acquiring and using information, interacting and relating with others, and caring for himself; and no limitations in all other areas. (T. 338-39). Dr. Prowda concluded that K.C.'s ADHD and learning disability combined to form a severe impairment but that his impairments did not meet, medically equal, or functionally equal the Listings. (T. 336, 340).

b.       *Other (teacher) Source Opinion*[17]

On October 3, 2007, early in the relevant time period, Ms. Homer expressed her opinion that K.C. has "very serious problems" in activities relevant to three domains (acquiring and using information, attending and completing tasks, and caring for himself) and additional "serious problems" in activities relevant to a total of four domains (acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself) of childhood functioning. (T. 196-203).

Almost three years later, on July 11, 2010, Mr. Martin opined that K.C. has "serious problems" in activities relevant to three domains (acquiring and using information, attending and completing tasks, and caring for himself) of childhood functioning. (T. 268-275).

_____

[17]     Teachers' "other source" opinions came from (a) special education teacher, Renee Homer, and (b) life sciences teacher, Joshua Martin. (T. 196-203, 268-275). Additional "other source" information includes K.C.'s school psychologist (T. 317-29), a third grade teacher (T. 387-90), and speech language therapists (T. 210-11); however, this evidence is mixed in its import as to K.C.'s functional limitations, as all of it predates the relevant time period.

2.  Application

SSR 06-3p directs administrative adjudicators to consider certain factors when determining weight to give opinion evidence provided by "acceptable medical sources" such as treating physicians and "other sources." *See* discussion, *supra,* in Section II. *C.* Plaintiff argues that ALJ Gale disregarded SSR 06-3p when he discounted or gave lesser weight to non-medical opinions of K.C.'s teachers, Ms. Homer and Mr. Martin.

As a threshold matter, plaintiff's brief mischaracterizes evidence provided by teachers Homer and Martin by repeatedly arguing that they found "marked" and/or "extreme" limitations in certain domains.  (Dkt. No. 12, at 11-21). Neither teacher assessed K.C.'s overall functional abilities in *any* of the six domains.  (T. 196-203, 268-275).  Neither teacher used the term "marked" or "extreme" in rating K.C.  *Id.*  Rather, each teacher rated K.C. on his ability to function in a number of given *activities* relating to one of the six domains.  *Id.* Moreover, the teachers used a different scale ranging from "no problem" to "a very serious problem." *Id.* Plaintiff does not cite nor is the undersigned aware of any authority equating "a serious problem" rating on a Teacher Questionnaire to the Commissioner's definition of "marked" limitation.  Similarly, no cited authority suggests that "a very serious problem" rating on a Teacher Questionnaire corresponds directly to the Commissioner's "extreme" limitation.[18]

That said, had ALJ Gale given greater weight to teachers' opinions, he might have found that K.C. has marked limitations in two domains or an

---

[18]     The terms "marked" and "extreme" are defined in the Commissioner's regulations at 20 C.F.R. § 416.926a(e).

extreme limitation in one, and such findings would have been tantamount to a finding of disability. Therefore, the court must consider carefully whether ALJ Gale erred in giving lesser weight to the teachers' "other source" opinions than to the medical opinions of the treating physician and state agency examining and reviewing consultants.

ALJ Gale committed no such error. First, he did not altogether ignore or disregard teacher opinions entirely; he expressly gave "some weight" to "opinions expressed by the claimant's teachers, based upon their almost daily interaction with the claimant and SSR 06-3p." (T. 20). He further gave "appropriate weight" to teachers Homer's and Martin's opinions in view of the "whole child approach (SSR 09-1p)."[19] (T. 20.) ALJ Gale observed that Ms. Homer assessed mostly serious and very serious problems in acquiring and using information and a few serious and very serious problems in attending and completing tasks. (T. 20, 196-203). ALJ Gale specifically embraced her opinion that K.C. has a learning disorder affecting his abilities in language and math and gave appropriate weight to this opinion. (T. 20). Indeed, in his analysis, ALJ Gale recognized the activities in which Ms. Homer' noted a very serious concern and explained the basis for his finding "less than marked limitation" and/or "no limitation" in the correlating domains. (T. 20-21, 23, 24-25, 25-26). ALJ Gale also explained his rationale for finding a "marked limitation" in the domain attending and completing tasks. (T. 21-22).

ALJ Gale noted, however, that of all the areas assessed under the six domains, Mr. Martin found that K.C. demonstrated no "very serious" problems

---

[19]     *See, supra,* Section II.A, n. 6.

and "serious" problems only in reading and comprehending written material, organizational skills, completing assignments, working at a reasonable pace, and knowing when to ask for help. (T. 20, 268-75). ALJ Gale also factored Mr. Martin's observation that K.C. was frequently absent and/or late to school. (T. 20, 268).[20]

Second, ALJ Gale cited SSR 06-3p (and also SSR 09-1p), indicating his awareness of and intent to follow both governing Rulings when weighing opinion evidence.[21]

Third, and faithfully to SSR 06-3p, he acknowledged the frequency that the teachers saw K.C., but compared that with superior expertise and more comprehensive perspectives of medical sources whose "domain" opinions arguably differed from the teachers. He noted inconsistencies in the teachers' opinions with other parts of the record.[22] He weighed other evidence, excessive truancy, that might explain K.C.'s poor performance in school.

---

[20]    In the 2009-10 school year, K.C. was tardy to school 87 times and absent 30 times. (T. 276-279). His attendance percentage for that school year was 83.2 percent. (T. 279).

[21]    Social Security Rulings constitute the Commissioner's internal policy and interpretations, and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

[22]    In response to the question "[w]hat else can you tell us about the child's problems with these activities," located on portion of the questionnaire relating to the domain "interacting and relating with others," Ms. Homer noted that K.C. can be withdrawn and opined that this could be why he has a hard time making/keeping friends. (T. 199). Later during that same month, on October 23, 2007, K.C. reported to Dr. Tien that he had friends. (T. 334). K.C. also testified at the hearing that he had a birthday party that included friends. (T. 64-65).
    In 2007, Ms. Homer, under the domain "acquiring and using information," rated K.C. a "5," denoting a "very serious problem" in three activities (reading and comprehending written material, recalling and applying previously learned material, and applying problem-solving skills in class discussions). In contrast, in 2010, Mr. Martin rated K.C. only a "4," "3," and "2" in each respective activity. (T. 269).

Finally, although ALJ Gale did not expressly mention this fact, the record discloses that the teachers' opinions generally were simple, circled ratings on a form questionnaire with only a few single-sentence, conclusory statements that were neither explained nor documented by relevant, supporting evidence. (T. 196-203, 268-275).

Under these circumstances, Plaintiff does not carry her burden of demonstrating legal error in ALJ Gale's application of SSR 06-3p. Rather, plaintiff essentially invites the court to re-weigh the evidence and give more weight to the non-medical teacher opinions. A federal judge might do so were it within a court's power. However, it is an administrative judge's exclusive prerogative to sort through and resolve conflicts in the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Here, ALJ Gale acted within his legal discretion and in accordance with SSR 06-3p when affording varying degrees of weight to both medical and non-medical opinions when reaching his conclusion. Hence, remand is not warranted on this basis.

B.    *Did ALJ Gale Err in Failing to Develop Record?*

As noted earlier, ALJ Gale gave substantial weight to opinions of treating physician, Dr. Ananda. (T. 19). Dr. Ananda's opinions were contained in his treatment notes. (T. 330, 347-86). Dr. Ananda was not asked to provide additional information in a forensic statement directly addressing each domain factor or other areas.

In less than a page, plaintiff argues that ALJ Gale erred by not recontacting Dr. Ananda and requesting him to provide a more complete assessment of K.C.'s functional limitations. Specifically, Plaintiff argues that

ALJ Gale had a legal duty to obtain a function-by-function opinion in addition to medical records.

Although Dr. Ananda did not assess K.C.'s functional abilities in the precise context of domain factors, Dr. Ananda saw K.C. 36 times during the relevant period, and regularly found that K.C.'s ADHD was under control with his medication. (T. 330, 347-59, 372-385). Specifically, during the relevant period, Dr. Ananda opined 21 times that K.C.'s ADHD was *under control* (T. 347-48, 351-52, 354, 356-57, 359-60, 372-73, 375-79), opined 4 times that K.C.'s ADHD was *improving* (T. 347, 354-55, 376), and opined only twice that K.C.'s ADHD was *not under control*, and in one of those instances, K.C. was not taking his prescribed medication (T. 351-52).[23] Dr. Ananda made no findings related to impulsiveness. (T. 330, 333, 347-59, 372-85). Rather, he opined that K.C.'s ADHD was of the predominantly "inattentive" subtype rather than of the predominantly "hyperactive/impulsive" subtype. (T. 385).

This evidence is adequate, and there are no obvious gaps in the record provided by Dr. Ananda. Dr. Ananda saw K.C. regularly throughout the relevant period, and ALJ Gale could reasonably deduce that had K.C. exhibited any marked or extreme limitations in functioning, Dr. Ananda would not have assessed his ADHD as being well-controlled through medication. ALJ Gale, therefore, did not err by not recontacting her. *See Rosa*, 168 F.3d at 79 n. 5.

---

[23]    In a follow-up visit on July 20, 2009, Dr. Ananda noted that K.C.'s ADHD was "not under control." (T. 352). K.C. was a "no show" at his next scheduled appointment on August 17, 2009. *Id.* When K.C. returned on September 1, 2009, Dr. Ananda noted he was "out of pills" and his ADHD was "not under control." (T. 351).

C. *Does a Flawed Credibility Choice Deprive the Decision of Substantial Evidence?*

In an even more truncated argument, Plaintiff argues that ALJ Gale's credibility assessments of K.C.'s and plaintiff's testimony is flawed because he did not accurately recite underlying facts. (Dkt. No. 12, 21-23). This is a boot-strapping, house-of-cards argument premised on earlier points contending that (a) teachers' opinions represent more credible evidence and (b) the record is deficient for lack of functional limitation assessments from K.C.'s treating physician. Since these predicate arguments lack merit, this point – as stated – fails.

Otherwise, ALJ Gale's decision to give "partial credibility" to allegations and testimony of K.C.'s mother is supported by substantial evidence and in accordance with governing legal principles. ALJ Gale properly recited the facts, both good and bad, and reached his decision. (T. 18-26). The weight of the evidence from treating as well as consulting and reviewing medical sources supports his finding that the effects of K.C.'s symptoms are not so intense, persistent, or functionally limiting as to render K.C. disabled. *Id.* ALJ Gale considered the necessary factors outlined in 20 C.F.R. § 416.929 and explained the rationale for his findings. Because his decision is supported by substantial evidence and his credibility findings are not "patently unreasonable," remand on this ground is not warranted. *See Campbell*, 465 Fed. App'x at 5; *Pietrunti*, 119 F.3d at 1042; *Aponte*, 728 F.2d at 591.

# VII.  Recommendation

The Commissioner's decision denying disability-based benefits should be **AFFIRMED**.

# VIII.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST
AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN
FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___31___ day of ___December___ 2012.

*Earl S. Hines*

Earl S. Hines
United States Magistrate Judge